UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 12-CR-20075 |
| ) | |
| GERARDO CORREA, ) | |
| ) | |
| Defendant. ) | |

**OPINION**

This case is before the court for ruling on the Motion to Suppress (#24) filed by Defendant, Gerardo Correa. An evidentiary hearing was held on June 17, 2013. This court has carefully considered the evidence presented at the hearing and the parties' written and oral arguments. Following this careful review, Defendant's Motion (#24) is DENIED.

BACKGROUND

On October 17, 2012, Defendant was charged by indictment (#15) with one count of knowing and intentional possession of 1,000 or more marijuana plants, with the intent to manufacture and distribute it, in violation of 21 U.S.C. 841(a)(1), 841(b)(1)(A). Defendant is in custody pending trial and is represented by retained counsel, Robert L. Rascia.

On March 8, 2013, Defendant filed a Motion to Suppress Evidence (#24). Defendant argued that he was detained and arrested in violation of his constitutional rights and his confession was obtained as a result of his illegal, warrantless arrest. On April 23, 2013, the Government filed its Response to Defendant's Motion to Suppress Evidence (#25). The Government argued that agents properly stopped Defendant pursuant to <u>Terry v. Ohio</u>, 392

U.S. 1 (1968) because they had reasonable and articulable suspicion that Defendant was involved in illegal activity due to the proximity of Defendant to a large cannabis grow and the fact that Defendant was in an area of suspected criminal activity.

                              EVIDENTIARY HEARING

An evidentiary hearing was held on June 17, 2013. At the hearing, the Government presented the testimony of Jason Holt, a sergeant with the Illinois State Police assigned to the Kankakee Area Metropolitan Enforcement Group (KAMEG), and Chris Kidwell, an officer with the Kankakee City Police Department who is the deputy director of KAMEG. This court found the testimony of both witnesses to be credible.

The evidence showed that, on September 14, 2012, KAMEG received information from the Illinois State Police Air Operation Division that they had located a large cannabis grow in a wooded area in the Pembroke Township area. On September 17, 2012, KAMEG agents, including Holt and Kidwell, went to that location at 6:00 a.m. The area could only be reached using dirt roads. The agents began searching the wooded area on foot to see if they could locate the cannabis grow. They followed a path which had been made just by someone walking back and forth. The path came to a V. They first went to the left on the V and found two large areas which had been cleared of shrubs and trees which were full of cannabis plants. They then went back and went to the right on the V and that led to three additional cannabis grow plots. The cannabis plants on the five different plots ranged from three feet to nine feet in height. Both Holt and Kidwell testified that it was the largest

cannabis grow they had ever seen. The agents also observed a chemical sprayer, chemicals to treat the plants, trimmers and hundreds of Styrofoam cups which had held the cannabis plants at the beginning stages until they got big enough to plant in the ground.

Holt testified that the five plots containing cannabis were located in a rural area in which there were no barns, ponds, rivers or anything that would bring someone out there. There were also no gas stations, towns, restaurants or grocery stores in the area. Kidwell testified that there wasn't anything else out there, whether recreational, fishing or boating. After the agents located the five plots, they began surveillance to see if anybody would come and tend to the plants. Holt was wearing a vest which had a police badge on the front that said "Police" and also said "Police" in large letters on the back. Kidwell was also wearing a police vest and had a badge around his neck.

At approximately 6:00 p.m., Holt, Kidwell and Special Agent Mike Herscher were still conducting surveillance in the area. They heard a car and then heard a car door slam and then a second car door slam. They hid in the bush on the east side of the trail. They observed a Hispanic male, later identified as Mr. Haro-Gutierrez, come down the path. Approximately a minute later, a second Hispanic male, later identified as Defendant, came down the path. Both were walking in a straightforward manner down the path. Kidwell was in a position to see that they went straight to the left when they got to the V in the path. Kidwell lost sight of them once they veered to the left. After about 15 minutes, Kidwell saw them come back together on the path. As they approached where the agents were located,

3

the agents stood up with their guns at "low ready" and Kidwell announced "Police, police" and ordered them onto the ground. Holt explained that "low ready" means that the barrel of the gun is pointing down towards the ground and is not pointed at the person. When both of the men were on the ground, they were handcuffed. After the men were secured, the agents put their guns away. Holt testified that the men were handcuffed for the officers' safety. He testified that they "were out in the middle of almost nowhere" so that backup was some time away. He also testified that, because of the large amount of cannabis involved, there was a very high possibility that the men were armed. Holt testified that they did not know whether they were armed because people hide knives and guns where you can't see them. Kidwell testified that "there's always a propensity of violence when you're dealing with drugs" and that there "could be staged weapons in the woods." Kidwell patted Haro-Gutierrez down for weapons. Herscher conducted a pat-down search of Defendant for weapons and Defendant was identified when Herscher found his driver's license. Holt testified that Defendant was not free to leave from that moment forward.

   Holt testified that he located the truck the two men had arrived in to make sure there was no one else in the truck. When he returned, Defendant was still handcuffed but was standing up. Holt took him out to the roadway and asked him if he spoke and understood English. He answered "yes." Holt advised Defendant that the agents were with Kankakee Area Metropolitan Enforcement Group and that he was being detained as part of a drug investigation that was currently ongoing in that area. Holt asked Defendant what he was

doing in that area and Defendant admitted to being out there checking on the cannabis plants. Holt then advised Defendant of his rights under <u>Miranda</u>. Defendant agreed to answer questions without an attorney present.

Following the presentation of evidence, the parties were given an opportunity to argue their positions. Defendant's counsel argued that the agents did not see Defendant conduct any activity in relation to any of the plots of cannabis, but only saw him walking on the path. He argued that the agents did not have enough information to justify a <u>Terry</u> stop and that what occurred went well beyond a <u>Terry</u> stop because the agents stopped Defendant with weapons drawn, handcuffed him and searched him. Defendant's counsel argued that Defendant was arrested and, at that point, the agents "certainly knew nothing that would have indicated [Defendant] had engaged in any unlawful activity, other than he walked on that path." Defendant's counsel argued that all of the information learned subsequent to the arrest should be subject to suppression as a violation of Defendant's Fourth Amendment rights. Defendant's counsel also argued that an interrogation began before <u>Miranda</u> warnings were given in violation of the Fifth Amendment.

In response, the Government argued that this was a <u>Terry</u> stop which was justified by the agents' reasonable suspicion of criminal activity. The Government argued that there was reasonable suspicion of criminal activity based upon the location of the stop, noting that there was nothing else out there. The Government also argued that a stop was justified because the agents saw "two people who very much knew where they were going and the fact that

this location is only a location of criminal activity" because there was "nothing else to do out there." The Government also argued that officers may conduct a Terry stop with guns drawn and handcuffs and this does not transform a Terry stop into an arrest if the surrounding circumstances give rise to a justifiable fear for personal safety. The Government also argued that the statement was properly obtained because Defendant was not in custody, he was detained pursuant to Terry so that Miranda warnings were not required at that point. The Government argued that, after the agents had probable cause, they told Defendant he was under arrest and gave Miranda warnings.

In rebuttal, Defendant's counsel reiterated that the agents did not see Defendant go to a plot containing cannabis and did not know if he went there. He also argued that the fact that they were in a wooded area made it less likely that the agents were in danger because "[y]ou don't find weapons out in a wooded area." In addition, Defendant's counsel argued that Defendant was in custody when questioning began because he was not free to leave. He argued that "[f]or all intents and purposes, it was a custodial interrogation which required the giving of Miranda before the questioning started."

This court then directed the court reporter to prepare a transcript of the evidentiary hearing. The transcript (#27) was filed on June 25, 2013.

## ANALYSIS

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const., amend. IV. It is well settled, however, that "a brief, investigatory

stop that demands only a limited intrusion into an individual's privacy is permitted under the Constitution when it is based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" United States v. Baskin, 401 F.3d 788, 791 (7th Cir. 2005), quoting Terry v. Ohio, 392 U.S. 1, 21 (1968).  In other words, a Terry stop is permissible where the police officer has "reasonable suspicion, supported by articulable facts, that criminal activity is afoot." Baskin, 401 F.3d at 791.  In making a reasonable suspicion assessment, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"  United States v. Mancillas, 183 F.3d 682, 695-96 (7th Cir. 1998), quoting Terry, 392 U.S. at 21-22.  The court must examine the totality of the circumstances and the real issue is whether the police officers' conduct was reasonable, given their suspicions and the surrounding circumstances. Mancillas, 183 F.3d at 696. "Reasonable suspicion has been defined as 'some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.'" United States v. Ienco, 182 F.3d 517, 523 (7th Cir. 1999), quoting United States v. Cortez, 449 U.S. 411, 417 (1981).

    Based upon the facts presented in this case, this court agrees with the Government that a Terry stop was warranted.  The evidence presented showed that a very large cannabis grow consisting of five separate plots, two to the left and three to the right of a V in a path worn down with foot traffic, was located in a remote rural area.  The uncontroverted evidence

showed that there was nothing else in the area, no barns, ponds, rivers or anything recreational that would bring someone out there. There were also no gas stations, towns, restaurants or grocery stores in the area. The agents saw Defendant walk in a straightforward manner down the path and then turn to the left on the V. The agents knew that going to the left on that path led only to two plots of cannabis. Therefore, this court concludes that the agents had reasonable suspicion that Defendant was involved in the cannabis grow and, therefore, engaged in criminal activity. See United States v. Weatherford, 2011 WL 5408441, at *7 (N.D. Ind. 2011) (totality of the circumstances could lead an experienced officer to conclude that criminal activity was afoot). Accordingly, the agents could legitimately conduct a Terry stop of Defendant. See United States v. Singler, 107 F.3d 874, 1997 WL 58805, at *4-5 (7th Cir. 1997) (unpublished disposition) (court found sufficient justification for the officers to participate in a Terry stop of the defendant where the officers observed the defendant on the property and walking toward cannabis plants).

Defendant has argued that, because the agents ordered him to the ground with their guns drawn, handcuffed him and then searched him, it was not a Terry stop but was an arrest which must be supported by probable cause. However, the Government is correct that officers conducting an investigatory stop may approach with guns drawn and may handcuff the suspect, when those actions are necessary for officer safety, without transforming the investigatory Terry stop into a full custodial arrest. See United States v. Smith, 697 F.3d 625, 632 (7th Cir. 2012); United States v. Shoals, 478 F.3d 850, 853 (7th Cir. 2007); United

States v. Gonzalez-Villa, 2007 WL 1576131, at *4 (N.D. Ill. 2007). "To require an officer to risk his life in order to make an investigatory stop would run contrary to the intent of Terry v. Ohio." United States v. Stewart, 388 F.3d 1079, 1085 (7th Cir. 2004), quoting United States v. Tilmon, 19 F.3d 1221, 1226 (7th Cir. 1994).

In this case, both Holt and Kidwell testified that the five plots of cannabis constituted the largest cannabis grow they had ever seen. It was reasonable for them to believe that there was a high possibility that the persons involved in this large operation would be armed. Also, Holt testified that they were out in the middle of nowhere and backup was some distance away. This court therefore concludes that, in conducting the Terry stop, it was reasonable for the agents to draw their guns and handcuff the two men in the interest of officer safety. See Shoals, 478 F.3d at 853 (rejecting argument that police-citizen encounter became custodial arrest on account of police ordering the defendant to exit the house, drawing their guns and handcuffing him); see also Weatherford, 2011 WL 5408441, at *10; Gonzalez-Villa, 2007 WL 1576131, at *4. This is especially true where, as here, guns were drawn but not pointed at Defendant. See Weatherford, 2011 WL 5408441, at *10. The Seventh Circuit has recognized that "[w]hen a suspect is considered dangerous, requiring him to lie face down on the ground is the safest way for police officers to approach him, handcuff him and finally determine whether he carries any weapons." Tilmon, 19 F.3d at 1228. Officers conducting a Terry stop may pat down a suspect to search for weapons if they have reason to believe that the suspect is armed and presents a danger to the officers. Terry, 392 U.S. at

26-27; Shoals, 478 F.3d at 853. Because this court has already concluded that the agents reasonably believed their safety was at risk, this court agrees with the Government that a pat-down search of Defendant was proper under Terry.

In summary, this court concludes that the actions of the agents were reasonable under the circumstances here and there is no basis to suppress the evidence under the Fourth Amendment.

Defendant has also argued that he was handcuffed and in custody, so he could not be questioned without being advised of his rights under Miranda. Holt testified that he advised Defendant that the agents were with Kankakee Area Metropolitan Enforcement Group and that he was being detained as part of a drug investigation that was currently ongoing in that area. Holt asked Defendant what he was doing in that area and Defendant admitted to being out there checking on the cannabis plants. At that point, Defendant was under arrest and Holt advised Defendant of his rights under Miranda. This court agrees with the Government that Holt's initial question to Defendant was proper while Defendant was detained pursuant to Terry. The United States Supreme Court has recognized that an officer's inquiry during a Terry stop must be reasonably related in scope to the justification for the stop's initiation. Berkemer v. McCarty, 468 U.S. 420, 439 (1984). "Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond." Berkemer, 468 U.S. at 439; see also Hiibel v. Sixth Judicial Dist. Court of Nev.,

Humboldt County, 542 U.S. 177, 192-93 (2004). The Seventh Circuit has held that "Miranda warnings are not required where a suspect has been detained pursuant to a Terry investigatory stop." Gonzalez-Villa, 2007 WL 1576131, at *4, quoting United States v. Burns, 37 F.3d 276, 280 (7th Cir. 1994).

In this case, Holt put his gun away when Defendant was placed in handcuffs and did not have his gun drawn when he took Defendant out to the roadway. Defendant was still in handcuffs, but was standing up. Holt then informed Defendant that they were conducting a drug investigation and asked him what he was doing in that area. This court concludes that this question was an appropriate question to ask during the Terry detention to try to obtain information confirming or dispelling Holt's suspicions that Defendant was involved with the cannabis grow. Defendant voluntarily answered the question, confirming Holt's suspicions. At that point, Holt had probable cause to arrest him. This court concludes that "[a] reasonable person in [Defendant's] position would not have considered the brief questioning at the scene to be a custodial interrogation." See Weatherford, 2011 WL 5408441, at *11, quoting United States v. Murray, 89 F.3d 459, 462 (7th Cir. 2008). This court therefore concludes that Defendant was not in custody when Holt asked him what he was doing in the area and Miranda warnings were not necessary before asking this question. See Gonzalez-Villa, 2007 WL 1576131, at *4. Therefore, Defendant's statement was not given in violation of his Fifth Amendment rights.

IT IS THEREFORE ORDERED THAT:

(1)   Defendant's Motion to Suppress (#24) is DENIED.

(2)   This case remains scheduled for a status conference on July 19, 2013, at 10:45 a.m.

ENTERED this 19th day of July, 2013

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE